## UNITED STATES *v.* CONNALLY.

*(District Court, D. Indiana.* March 29, 1880.)

WRONGFULLY WITHHOLDING PENSION MONEY—REV. ST. §§ 4766 AND 5485 CONSTRUED AND RECONCILED.—Section 4766 of the Revised Statutes, which declares that "hereafter no pension shall be paid to any person other than the pensioner entitled thereto," does not conflict with section 5485 of the Revised Statutes, which declares that any person "who shall wrongfully withhold from the pensioner or claimant the whole or any part of the pension or claim allowed and due such pensioner or claimant, shall be deemed guilty of a high misdemeanor."

CHARGE OF COURT—FORM OF QUESTION PUT TO JURY.—Where there were two conflicting theories as to how defendant obtained possession of certain money, it was not outside the province of the court, in commenting upon the testimony, to ask the jury whether one theory was not the probable and natural theory rather than the other.

This case was argued by Mr. Holstein, district attorney, for the government, and Mr. George Butler for the defendant, it being submitted to both judges by agreement, though tried in the district court, in order to take the opinion of the circuit judge, who concurred with the district judge.

DRUMMOND, J. The defendant was tried before the district judge, on the indictment in this case, and found guilty on the second and third counts, and not guilty on the first, and a motion is now made for a new trial and in arrest of judgment.

The indictment is founded on section 5485 of the Revised Statutes.

The first count charges the defendant with wrongfully withholding from one Andrew J. Henderson, a pensioner of the United States, certain moneys which came to the defendant as an agent and attorney of the said Henderson.

The second and third counts charge him with being instrumental in prosecuting the claim of Henderson for a pension, and, being so instrumental in the prosecution of the claim, withholding wrongfully from him certain moneys of the pensioner.

The first question made is as to the validity of the counts in the indictment upon which he was found guilty.

It is sufficient ordinarily, in cases of a misdemeanor, to allege the offence in the language of the statute; and to state that the defendant was instrumental in presenting the claim of Henderson for a pension, without setting forth the particular circumstances in which that instrumentality consisted, was all that was requisite in this case.

The main offence, if any, was in wrongfully withholding money from the pensioner. The law punishes a person because, being instrumental in the prosecution of a claim for a pension, he is presumed to have a special connection with the circumstances which constitute the gravamen of the charge. And it seems, for that reason, to declare that no person who has this connection with the prosecution of a claim shall be permitted unlawfully to withhold money from the pensioner.

There is another question in the case growing out of the legislation of congress as to the description of the offence. The thirteenth section of the act of July 4, 1864, declared that no agent or attorney should demand or receive any greater compensation than that prescribed in the act; and it also declared, in language somewhat similar to a portion of section 5485 of the Revised Statutes, that if an agent or attorney wrongfully withheld from a pensioner any part of a pension or claim allowed he was to be deemed guilty of a high misdemeanor, and punished as prescribed in the statute. It will be seen that in this section, while the "withholding" fol-

lows language referring to the receipt by the agent or attorney of a certain compensation, and therefore indicates the receipt before the withholding of money, yet it is by indirection only, or by implication, which seems to be true of the act of 1873 as well as section 5485 of the Revised Statutes.

The third section of the act of July 8, 1870, declared that thereafter no pension should be paid to any other person than the pensioner who was entitled to the same. This struck at the root of what was supposed to be an abuse under the previous legislation of congress. This was a direction to every officer of the government whose duty it was to pay a pension.

This is claimed to have an important bearing upon the thirteenth section of the act of 1864, by thus explicitly prohibiting the payment of money to any one but the pensioner himself; and, therefore, rendering apparently meaningless the latter clause of the thirteenth section of the act of 1864, in relation to the withholding of money.

In the case of the *United States* v. *Irvine*, 8 Otto, 450, the question was presented to the supreme court whether the act of 1870 repealed the thirteenth section of the act of 1864, and the court, referring to this point, says: "It is not easy to see, therefore, how an attorney is to get possession of the money, and how he can withhold it, or why there should be a law for punishing him for such withholding." "The argument," the court says, "is not without force; but, without deciding that point, we prefer to answer another question, which will decide the present case." The question which was presented there was, therefore, whether the act of 1870 necessarily repealed the act of 1864. The act of 1873 was not referred to, because the offence as charged was committed before the passage of that act. But here, with the act of 1870 in force, the act of the third of March, 1873, was passed, the thirty-first section of which declared that no agent or attorney, or other person instrumental in prosecuting any claim for pension or bounty land, should receive any other compensation for his services in prosecuting a claim than such as the commissioner of pensions should direct to be paid to him, not exceeding $25. And then the language

of the section is substantially like that of section 5485 of the Revised Statutes, as it now stands, and under which this indictment was framed, viz.: "Any agent, attorney or other person, *instrumental* in prosecuting any claim for pension, * * * who shall directly or indirectly contract for, demand or receive or *retain* any greater compensation for his services or instrumentality in prosecuting a claim for a pension than as provided," etc. It will be observed that the word *retain* is used, thus implying that there might be money of the pensioner in the hands of the agent or attorney or other person, notwithstanding the act of 1870 forbade payment to such agent, attorney or person. And then the section proceeds, the language used in section 31 of the act of 1873 and in section 5485 of the Revised Statutes being precisely the same: "Or who shall wrongfully withhold from the pensioner or the claimant the whole or any part of the pension or claim allowed and due such pensioner or claimant, he shall be deemed guilty of a high misdemeanor."

It was an act passed after the act of 1870 in which this language is used. The clause in section 3 of the act of 1870 is preserved in section 4766 of the Revised Statutes, which declares that "hereafter no pension shall be paid to any person other than the pensioner entitled thereto." So that both these parts of the Statutes of 1870 and 1873 are found in the Revised Statutes, and the question is whether they cannot stand together; whether, in other words, we can reject section 5485 of the Revised Statutes merely because it does not speak of the receipt of money by an agent, attorney or other person representing the pensioner, but merely mentions the withholding of the money from him. It seems to me that, taking all this legislation together, while it indicates, perhaps, not quite so much care as there ought to be in legislating at different times upon the same subject, still it is the duty of the court to harmonize this various legislation, and if practicable to reconcile one part with another. And it must be presumed, I think, the intention of congress was, by incorporating into the Revised Statutes a part of section 31 of the act of 1873, to declare that whenever a person was

instrumental in prosecuting the claim of the applicant for a pension, and being thus instrumental the money of the pensioner should come into his hands, and he should unlawfully withhold it from the pensioner, that it was to be an offence for which he was to be punished, notwithstanding the act of 1870, as incorporated in the Revised Statutes, section 4766, declares that the pension money shall be paid to no one else than the pensioner; and that, while this was the purpose of the law, it must also be presumed it was the intention, if under any circumstances while a person was instrumental in prosecuting a claim or a pension, and the money of a pensioner came into his hands and he unlawfully withheld it, he was to be subjected to punishment. To take any other view of the case would be to strike out of the Revised Statutes one of its sections obviously intended to be enforced.

There is said to be error by the court in the instructions given to the jury. In examining the instructions carefully I see no objection that could be made to them upon what I understand were the conceded facts of the case. There was a portion of the charge in which the court asked the jury whether it was not probable or not natural that a certain theory of the facts was the true one. And the question is, whether there is anything in this that could be properly said to withhold from the jury the right to determine absolutely the facts in the case. The way it was put was this: Referring to certain facts which were not disputed, the court said, "Bearing in mind that the defendant wanted more of the money than he was entitled to by law for any assistance rendered by him in the transaction, (the claim for pension,) and that he induced the pensioner to go all the way from the soldiers' home to Lafayette for the purpose of getting part of the money, as he says, in payment of his legal services in getting pensioner and his wife out of jail, and that the defendant and Orth went to Culver, where Orth got possession of the check, *is it not probable,*" the court says, "that the defendant would get the money into his own hands and retain the amount that he wanted to keep, paying only the balance

over to the pensioner? *Is it not natural* that the transaction should have been as Mrs. Henderson tells you it was?" etc.

Now there were two theories, one on the part of the prosecution and the other on the part of the defence, as to how the defendant got possession of the money. And, in commenting upon the testimony bearing upon this point, the court asked whether one theory was not the probable or natural theory, rather than the other. The court made no assertion that it was, but merely put the question to the jury. There was no withholding from the jury its right to determine what the facts were. I cannot see that it was going outside of the province of the court to put it in this form. It might have been put in this way: "Which is the more probable or natural of these two theories (referring to the one and to the other) it is for you to say." I do not think, although it is put in a little different form, that the jury could have understood that they were deprived of the right to judge of the facts, or that they were unduly influenced by the court in determining, according to their own views of the facts, the truth of the case.